## JURISDICTION OF JUSTICES OF THE PEACE UNDER THE CRABBE ACT.

Common Pleas Court of Scioto County.

BASIL CUDLIP V. THE STATE OF OHIO.

Decided, May, 1921.

*Violation of the Crabbe Act—Prosecution Before a Justice of the Peace —Jurisdiction Conferred by Section 6.*

A resident of the city of Portsmouth, arrested upon warrant issued upon affidavit filed with justice of the peace outside the corporate limits of the city for violating the Crabbe act, is tried and convicted. Error proceedings are prosecuted, the sole contention being that the justice of the peace by virtue of the act creating a municipal court in the city of Portsmouth, was without jurisdiction.

*Held:* That the justice of the peace did have jurisdiction and that Sections 6 and 9 of the Crabbe act expressly repeal Section 38 of such municipal court act.

Stephenson, J.

This is a proceeding in error brought to review the judgment of William McManes, justice of the peace within and for Clay township, Scioto county, Ohio.

There is no dispute as to the facts. Basil Cudlip, plaintiff in error, being at the time a resident of the city of Portsmouth, Ohio, was arrested in the city of Portsmouth, charged with manufacturing intoxicating liquor in the city of Portsmouth and was taken before William McManes, a justice of the peace in and for Clay township, Scioto county, Ohio, tried, found guilty and sentenced to pay a fine of $1,000.

The only contention is that said justice of the peace had no jurisdiction to issue the warrant and try the case and that the judgment is utterly void and of no force and effect.

Originally the criminal jurisdiction of a justice of the peace was co-extensive with his county and he held a constitutional office.

The usual and ordinary jurisdiction of a justice of the peace at common law was co-extensive with his shire, yet by royal writ there was created a class of justices of the peace popularly known as "justices at large" who by force of a *"dedimus potestatum"* had jurisdiction in two, and some instances three adjoining shires. They were conservators of the peace and had general preliminary jurisdiction over certain crimes and original and final jurisdiction over others.

They could only hear such civil matters as was provided for by prerogative of the Crown and later by statute.

The criminal jurisdiction of a justice of the peace in Ohio has always been co-extensive with his county until restricted by the different acts creating municipal courts.

Section 38 of the act creating a municipal court for the city of Portsmouth, Ohio, found in Vol. 108 O. L., page 470, provides:

"No justice of the peace in any township or mayor of any village in Scioto county outside of the city of Portsmouth, in any proceeding, civil or criminal, in which any warrant, order of arrest, summons, order of attachment or garnishment, or other process except subpoena for witnesses, shall have been served upon a citizen or resident of Portsmouth or a corporation having its principal office in Portsmouth, shall have jurisdiction, unless such service be actually made by personal service within the township or village in which such proceeding may have been instituted, or in a criminal case unless the offense charged in any warrant or order of arrest shall be alleged to have been committed within such township or village."

This is a valid exercise of power and does not contravene Section 26, Article II, of the Constitution of Ohio requiring all laws of a general nature to have uniform operation throughout the state, as the establishment of a municipal court in the city of Portsmouth is by special grant of legislative power upon a particular subject.

See *obiter dictum* by Judge Newman in case *In re Hesse,* 93 O. S., p. 231, citing *State, ex rel,* v. *Block,* 65 O. S., 370, and *State, ex rel,* v. *Yeatman.* 89 O. S,, 44.

And it may be said in passing that the Crabbe act is created

in exactly the same way—Section 9, Article XV, Constitution of Ohio.

Section 6 of the Crabbe act, 108 O. L., part 2, p. 1183, provides:

"Any justice of the peace, mayor, municipal or police judge, probate or common pleas judge within the county *with whom the affidavit* is filed charging a violation of any of the provisions of this act, when the offense is alleged to have been committed in the county in which such mayor, justice of the peace or judge may be sitting, shall have final jurisdiction to try such cases upon such affidavits without a jury, unless imprisonment is a part of the penalty, but error may be prosecuted to the judgment of such mayor, justice of the peace or judge as herein provided. And in any such cases when imprisonment is not a part of the penalty, the defendant can not waive examination nor can said mayor, justice of the peace or judge recognize such defendant to the grand jury; nor shall it be necessary that any information be filed by the prosecuting attorney or any indictment be found by the grand jury."

The latter part of the repealing section of the Crabbe act, 108 O. L. Vol., 2, p. 1184, provides:

"All provisions of law inconsistent with this act are repealed only to the extent of such inconsistency."

Plaintiff in error insists that the Crabbe act does not *directly* repeal the municipal court act and, as repeals by implication are not favored, that Sec. 6 of the Crabbe act is a nullity in so far as it conflicts with Section 38 of the municipal court act in fixing the jurisdiction of justices of the peace, as limited to this particular case, and he cites *Mutual Electric Co.* v. *Village of Pomeroy*, 99 O. S., p. 75.

The court has no quarrel with the law announced in the above case—*it is the law;* but do we reach a point in the consideration of this case where it becomes applicable?

It must be remembered that since the adoption of our new Constitution the office of justice of the peace is purely a creature of statute, and its jurisdiction may be enlarged or diminished according to the whim or caprice of each succeeding Legislature, if done in accord with the established law.

Is the court called upon to determine whether or not Sections 6 and 9 of the Crabbe act impliedly repeal Section 38 of the municipal court act?

Counsel on both sides seem to think that is the sole question; the court thinks not.

Repeals are of two kinds, express and implied—express when declared in direct terms, and implied when the intention to repeal is inferred from subsequent repugnant legislation.

*Specific words of repeal* do not need to be used to bring about the express repeal of a statute. It is suflcient if enough is expressed to manifest the intention to repeal.

Where a statute (by words) repeals all former laws within its purview—this is an express repeal and sweeps away all existing laws upon the subject or subjects with which the repealing act deals. Sutherland on Statutory Construction, Vol. 1, Sec. 246.

Reasoning by analogy then the language—"All provisions of law inconsistent with this Act are repealed only to the extent of such inconsistency," constitutes an express repeal.

This court can not concur in the opinion of Judge Routzohn in case of *State of Ohio, ex rel,* v. *Cusick,* which opinion is set out in full in plaintiff in error's brief.

The learned judge in that case gives to the word "all" in the repealing section of the Crabbe act, a limited construction that this court can not grasp.

In effect that court holds that the word "all" refers only to laws pertaining to prohibition in the traffic of liquor.

"All" is the most comprehensive word we have, and if we ascribe to the Legislature just ordinary sense, we could not think that it would use the word "all" when it intended to express only a very small part.

"All" is a common, ordinary and usual word and must receive its common, ordinary and usual meaning, unless there· is some strong reason for giving it a restricted meaning.

This court finds no such reason.

The judgment of the justice of the peace will be affirmed and cause remanded for execution of sentence.

Plaintiff in error's exceptions are noted.